## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

A.M.P.V., a minor, by and through her next
friend Miriam Aguayo,

     *Plaintiff,*

    v.

WILLIAM H. BARR, et al.,

     *Defendants.*

Civil Action No. 20-cv-913 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff A.M.P.V. is a 16-year-old girl who fled Honduras with her mother after

allegedly suffering physical and sexual abuse at the hands of her father.  *See* Dkt. 10-13

(A.M.P.V. Decl.).  Upon their arrival at the U.S.-Mexico border in September 2019, Plaintiff and

her mother were returned to Mexico under the "Remain in Mexico" program, where they lived in

a makeshift camp in Matamoros, Mexico and traveled across the border to the United States only

to attend their hearings before an immigration judge.  *Id.*; Dkt. 13-1 at 2 (listing Plaintiff and her

mother's residence as "Matamoros Bridge, Matamoros, Tamaulipas").  Without the assistance of

a lawyer, Plaintiff's mother applied for—and was denied—asylum, withholding of removal

under Sections 209 and 241(b)(1) of the Immigration and Nationality Act ("INA"), and

withholding of removal under the Convention Against Torture on her own behalf and on behalf

of her daughter.  Dkt. 10-13 at 2–3 (A.M.P.V. Decl. ¶¶ 7, 9).  At the conclusion of the last of

these hearings, the immigration judge ordered Plaintiff and her mother removed from the United

States pursuant to 8 U.S.C. § 1229a, and, while reserving the right to appeal that decision, they

returned to Matamoros.  Dkt. 13-2 at 2-3.  Concerned about her safety, Plaintiff then returned to

the U.S border without her mother and presented herself to the authorities. Dkt. 10-13 at 3 (A.M.P.V. Decl. ¶ 8–9); Dkt. 13-2 at 2. As an unaccompanied minor, she was transferred to a detention center in McAllen, Texas, Dkt. 10-13 at 1 (A.M.P.V. ¶ 1), where she will remain pending her removal, which is currently scheduled for April 24, 2020, Dkt. 19.

Plaintiff filed this action, with the assistance of counsel, seeking to enjoin her removal and to compel Defendants to place her into new removal proceedings with all the protections statutorily accorded unaccompanied minors under 8 U.S.C. § 1232. *See* Dkt. 1. While litigating this case, Plaintiff has also sought administrative relief, moving to reopen her removal proceedings. *See* Dkt. 10-4. The immigration judge denied that motion, *see* Dkt. 10-6, and Plaintiff appealed to the Board of Immigration Appeals ("BIA"), *see* Dkt. 10-7, where her appeal remains pending. Plaintiff also sought a stay of removal pending consideration of her administrative appeal, and the BIA denied that request. Dkt. 10-10 at 3.

Plaintiff now moves for a temporary restraining order to stay her removal until this Court can issue a decision on her pending motion for a preliminary injunction. Dkt. 17. Granting the relief Plaintiff seeks would, she contends, promote the orderly adjudication of a case the implicates the rights and safety of a sixteen-year-old girl. Defendants, however, oppose even a brief stay, and, as explained below, the Court concludes that Plaintiff has failed to carry her burden of demonstrating that she is entitled to emergency relief. The parties have now briefed the question whether the Court has jurisdiction to enjoin Plaintiff's removal, and the Court is unpersuaded that it is likely—or even that there is a reasonable prospect—that it will ultimately hold that it has jurisdiction over Plaintiff's claims.

The Court must, accordingly, **DENY** Plaintiff's motion for a temporary restraining order, Dkt. 17.

# I. BACKGROUND

## A.      Factual Background

For purposes of the pending motion, Defendants do not controvert the following facts,
which Plaintiff supports by declaration and other evidence.  Plaintiff is a 16-year-old girl from
Honduras.  Dkt. 10-13 at 1 (A.M.P.V. Decl. ¶ 1).  In Honduras, she lived with her mother, father
and siblings and was frequently beaten and physically abused by her father.  *Id.* at 1–2 (A.M.P.V.
Decl. ¶ 4).  When she was 13, her father raped her and threatened to hurt her if she told anyone.
*Id.* at 2 (A.M.P.V. Decl. ¶ 5).  She eventually told her grandmother, who called the police.  *Id.*
Her father was arrested and sent to prison.  *Id.*  Her father's brother—who had previously been
incarcerated for murder—blamed and threatened her grandmother as a result of her father's
imprisonment.  *Id.* (A.M.P.V. Decl. ¶ 6).

Fearing retribution from both her uncle and her father, Plaintiff and her mother fled
Honduras and traveled to the United States to seek asylum.  *Id.* (A.M.P.V. Decl. ¶ 7).  On
September 16, 2019, after presenting themselves to authorities at the U.S.-Mexico border, they
were sent back to Matamoros, Mexico, where, pursuant to the "Remain in Mexico" policy, they
remained during the pendency of their immigration proceedings.  *Id.* (A.M.P.V. Decl. ¶ 7); Dkt.
13-1 at 2.  The next day, they were served with a notice to appear at a hearing on December 19,
2019 before an immigration judge in Harlingen, Texas.  Dkt. 13-5 at 2.

Ten days before that hearing, Plaintiff's mother filed applications for asylum,
withholding of removal under Sections 209 and 241(b)(1) of the INA, and withholding of
removal under the Convention Against Torture for the both of them.  Dkt. 10-13 at 2 (A.M.P.V.
Decl. ¶ 7); *see also* Dkt. 13-1 at 10 (application dated Dec. 9, 2019).  On January 10, 2020,
during their third appearance, those applications were denied, and the immigration judge orally

ordered Plaintiff's removal.  Dkt. 13-2 at 2 ("January Removal Order").  A document summarizing that oral decision indicates that Plaintiff and her mother reserved their right to appeal to the BIA and that any such appeal had to be filed on or before February 10, 2020.  Dkt. 13-2 at 2.  At no point in the process did Plaintiff or her mother have counsel.  *See* Dkt. 10-13 at 3 (A.M.P.V. Decl. ¶ 9).

At the conclusion of that hearing, Plaintiff and her mother were returned to Matamoros, Mexico.  *See id.* (A.M.P.V. Decl. ¶ 8).  On January 23, 2020, after seeing a group of men at the camp in Mexico attempt to kidnap another teenage girl, Plaintiff fled to the United States on her own and presented herself to immigration authorities.  *Id.* at 3 (A.M.P.V. ¶ 8); Dkt. 10-4 at 4.  She was then transferred to Upbring New Hope Center in McAllen, Texas, where she remains.  Ex. D-2 at 1; Dkt. 10-13 at 1 (A.M.P.V. Decl. ¶ 1).

While in Texas, Plaintiff acquired pro bono counsel and filed a motion to reopen her prior removal proceedings, *see* Dkt. 10-4, eight days after the deadline for appeal of the immigration judge's decision had passed, Dkt. 13-2 at 2.  That motion was denied on March 10, 2020.  *See* Dkt. 10-6.  Plaintiff, though counsel, then filed an appeal to the BIA, *see* Dkt. 10-8, which is still pending.  On April 1, 2020, Plaintiff's counsel was informed that she was scheduled for deportation on April 3, 2020.  Dkt. 10-13 at 3 (A.M.P.V. ¶ 10).  Plaintiff's counsel thus sought an emergency administrative stay of her removal while her appeal was pending before the BIA.  Dkt. 10-10.  The BIA denied that application.  *Id.*

On April 6, 2020, Plaintiff filed this action, seeking declaratory and injunctive relief and a writ of mandamus ordering that she be placed in new removal proceedings pursuant to 8 U.S.C. § 1229a. Dkt. 1.  Plaintiff contends that when she reentered the United States as an unaccompanied minor, she was entitled to the protections afforded unaccompanied minors under

8 U.S.C. § 1232, which include the appointment of counsel and, in her view, the commencement of new removal proceedings under 8 U.S.C. § 1229a.  *See* Dkt. 1.

Upon filing her complaint, Plaintiff also filed a notice indicating that this case was related to another case pending in this Court, *A.C.H.C. v. Barr*, No. 20-0770.  case.  Dkt. 2.  The Court ordered that the parties brief the question whether the two cases satisfy the related-case standard set forth in Local Rule 40.5.  Minute Order (Apr. 8, 2020).  On April 10, 2020, Plaintiff moved for a preliminary injunction, *see* Dkt. 9, and offered her argument as to why this case is related to *A.C.H.C.* under Local Rule 40.5, Dkt. 11.  On April 14, 2020, Defendants filed an opposition to Plaintiff's motion for a preliminary injunction and moved to dismiss her complaint, *see* Dkt. 12, Dkt. 13.  Defendants took no position on whether the two cases should be treated as related, noting that the question was a close one within the Court's discretion to decide either way.  Dkt. 14.  The Court, then, concluded the cases should be treated as related and explained that it would hear argument on the parties' cross-motions at the hearing previously scheduled for May 6, 2020 in *A.C.H.C. v. Barr*.  Minute Order (Apr. 16, 2020).

On April 7, 2020, Plaintiff renewed her application to the BIA for a stay of removal, this time seeking a stay pending resolution of this case.  *See* Dkt. 10-11.  That renewed application was denied on April 20, 2020.  Dkt. 17-3.  No administrative stay currently protects Plaintiff from removal.  Accordingly, on April 21, 2020, Plaintiff filed a motion for a temporary restraining order to prevent Defendants from effectuating her removal while the Court decides whether to grant her motion for a preliminary injunction.  Dkt. 17.  The Court held a hearing on the motion the same day.  Minute Entry (Apr. 21, 2020).

## II.  LEGAL STANDARD

"A temporary restraining order, is an extraordinary remedy" and "should be granted only when the moving party, by a clear showing, carries the burden of persuasion."  *Sibley v. Obama*, 910 F. Supp. 2d 309, 310 (D.D.C. 2011).  To secure a temporary restraining order, the moving party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that the moving party would suffer irreparable injury if the temporary restraining order were not granted; (3) that such an order would not substantially injure other interested parties; and (4) that such an order furthers the public interest."  *Id.* (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

These are the same four factors courts must consider when deciding whether to grant a preliminary injunction.  *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also* Wright & Miller, Federal Practice and Procedure § 2951 ("[T]he factors considered in ruling on a temporary restraining order mirror those on motions for a preliminary injunction.").  Before *Winter*, this circuit applied a "sliding-scale" approach to this four-factor analysis in which "a strong showing on one factor could make up for a weaker showing on another."  *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).  Since then, however, the D.C. Circuit has suggested on several occasions that *Winter* might have changed the analysis and that courts must now treat "a likelihood of success [on the merits] [as] an independent, freestanding requirement" for the grant of preliminary relief.  *Id.* at 393.  But the D.C. Circuit "has not yet needed to decide the issue, *League of Women Voters of United States v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016), and has "repeatedly declined to take sides . . . on the question," *Am. Meat Inst. v. U.S. Dep't of Agric.*, 746 F.3d 1035, 1074 (D.C. Cir. 2014), *reinstated in relevant part by* 760 F.3d 18 (D.C. Cir. 2014).

Regardless of the precise test that governs the issuance of a temporary restraining order, the D.C. Circuit has held, without qualification, that "a party who seeks a preliminary injunction 'must show a substantial likelihood'" that the Court has jurisdiction. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015); *see also Cal. Ass'n of Private Postsecondary Schools v. DeVos*, 344 F. Supp. 3d 158, 167 (D.D.C. 2018). "[A]n inability to establish a substantial likelihood of standing requires denial of the motion for [a] preliminary injunction" or temporary restraining order," but "not dismissal of the case." *Food & Water Watch, Inc.*, 800 F.3d at 913.

## III.  ANALYSIS

The Court begins by considering its statutory jurisdiction to issue the requested relief. Limited only by the Constitution, "Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Although, as a general rule, federal district courts have jurisdiction over "all civil actions arising under the Constitution, law, or treaties of the United States," 28 U.S.C. § 1331, Congress may "establish[] an alternative statutory scheme for administrative and judicial review" that curtails the broad grant of subject-matter jurisdiction contained in § 1331. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019). In responding to Plaintiff's motion for a preliminary injunction, Defendants contend that the jurisdiction-channeling and -stripping provisions contained in 8 U.S.C. § 1252 divest this Court of jurisdiction to review final orders of removal or to consider challenges to the execution of those orders. Dkt. 13 at 22–27. Plaintiff contends that these provisions have no bearing on her case because she was previously removed from the United States pursuant to the January Removal Order and then reentered as an unaccompanied minor;

because she is now entitled to be placed in new removal proceedings, with all of the rights

accorded unaccompanied minors; and because those proceedings have yet to occur, no removal

order is currently in place.  Dkt. 17-1 at 14–15.

Under 8 U.S.C. § 1252(g), "[e]xcept as provided in this section . . . , no court shall have

jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or

action by the Attorney General to commence proceedings, adjudicate cases, or execute removal

orders against any alien under this chapter."  8 U.S.C. § 1252(g).  Although the "arising from"

language might be read to preclude review of a broad swath of immigration-related claims, the

Supreme Court has construed the provision to apply only to claims challenging the three

enumerated actions: the commencement of proceedings, the adjudication of cases, and the

execution of removal orders.  *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S.  471,

482 (1999) ("*AADC*"); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (plurality

opinion) (in construing similar language in 8 U.S.C. § 1252(b)(9), noting that *AADC* did not read

the relevant clause to "sweep in any claim that can technically be said to 'arise from'" these three

actions).

Section 1252(g) does not preclude any judicial review of even the three enumerated

actions; it merely bars reviews "[e]xcept as provided in this section."  8 U.S.C. § 1252(g).

Another provision of § 1252, however, channels "review of all questions of law and fact . . .

arising from any action taken or proceeding brought to remove an alien from the United States"

to the process for review of "a final order" of removal, 8 U.S.C. § 1252(b)(9), to "the court of

appeals for the judicial circuit in which the immigration judge completed the proceedings," *id.*

§ 1252(b)(2).  Because "a petition for review filed with an appropriate court of appeals" is the

"sole and exclusive means for judicial review of an order of removal," subject to certain

exceptions not relevant here, *id.* § 1252(a)(5); § 1252(e), the district courts typically lack jurisdiction to review the lawfulness of removal orders.

Against this statutory backdrop, Defendants contend that Plaintiff's challenge, insofar as she does not challenge the validity of the January Removal Order, is a challenge to its execution and thus barred by § 1252(g).  Dkt. 13 at 25–26.  And, insofar as she does challenge the validity of the January Removal Order, that challenge is properly brought in the Fifth Circuit pursuant to 8 U.S.C. § 1252(b)(9) and (a)(5).  *Id.*  Plaintiff disagrees with this framing of the question and argues that the January Removal Order has no bearing on her claim because she was already removed pursuant to that order on January 10, 2020, when she was returned to Mexico at the conclusion of the hearing at which the immigration judge ordered her removal.  Dkt. 17-1 at 14– 15.  She further contends that, once a removal order has been executed, it is—in effect— exhausted and loses legal force.  *Id.*  Thus, under this line of reasoning, when she reentered the United States on January 23, 2020, she was not subject to an order of removal and was, pursuant to 8 U.S.C. § 1232, entitled to counsel and to the institution of new removal proceedings under 8 U.S.C. § 1229a.  *Id.*  And, because her prior removal order was neither reinstated, 8 U.S.C. § 1231(a)(5), nor was she issued a new order of removal pursuant to new removal proceedings, her scheduled removal from the United States lacks *any* operative order of removal.  *Id.*  Because she is not challenging "any action taken or proceeding brought to remove [her] from the United States under" the INA, *id.* § 1252(b)(9), and is not seeking to enjoin the execution of removal order, *id.* § 1252(g), she continues, none of the jurisdiction-channeling or -stripping provisions of § 1252 has any bearing on this case

Plaintiff's challenge raises difficult questions about the interrelationship between the reinstatement of prior orders of removal under 8 U.S.C. § 1231(a)(5) and the protections

afforded to unaccompanied minors under 8 U.S.C. § 1232.  The Court need not reach those

questions, however, because Plaintiff is mistaken about the fundamental premise of her

argument.  The order of removal issued on January 10, 2020 was not executed—*i.e.*, Plaintiff

was not "removed"—when she was returned to Mexico that day.  At the time she returned to

Mexico on January 10, 2020, Plaintiff's removal order was not final.  Decisions of immigration

judges only "become[] final upon waiver of appeal or upon expiration of the time to appeal if no

appeal is taken whichever occurs first."  8 C.F.R. § 1003.39.  The governing regulations further

provides that "decision in any proceeding . . . from which an appeal to the Board [of Immigration

Appeals] may be taken"—such as the entry of Plaintiff's order of removal by the immigration

judge—"shall not be executed during the time allowed for the filing of an appeal unless a waiver

of the right to an appeal is filed."  8 C.F.R. § 1003.6.  Here, the unrebutted evidence shows that

Plaintiff and her mother reserved—and did not waive—their right to appeal at the conclusion of

the hearing.  Dkt. 13-2.  Although the circumstances raise reasonable questions about whether

Plaintiff understood that she had been ordered removed and that her time to appeal had started to

run, *see* Dkt. 10-13 at 3 (A.M.P.V. Decl. ¶¶ 8–9), she presses no such argument here, *Id.*

(A.M.P.V. ¶ 9), nor would such an argument further her contention that the January Removal

Order was exhausted by Plaintiff's return to Mexico at the conclusion of her hearing.  The Court,

accordingly, concludes that the January Removal Order did not become final—and was not

subject to execution—until February 10, 2020, nearly two weeks after Plaintiff reentered the

United States.

    This conclusion finds additional support in the Third Circuit's decision in *E.O.H.C. v.*

*Secretary of U.S. Department of Homeland Security*, 950 F.3d 177, 184 (3d Cir. 2020).  In that

case, the court held that 8 U.S.C. § 1252(b)(9) did not divest the district court of jurisdiction to

consider the lawfulness of the plaintiff's return to Mexico under the "Remain in Mexico" policy because that action was not an "action taken or proceeding brought to *remove*" an alien. *Id.* (emphasis added). The Court explained that, even if as a matter of common usage one might regard a "return" to Mexico to constitute "removal" from the United States, "'[r]emoval' is a term of art in immigration law" that, subject to certain exceptions not relevant here, *see* 8 U.S.C. § 1231(b), "means sending an alien back permanently to his country of origin." *Id.* Thus, in that case, "[i]nterim return to Mexico [was] not part of the process of removal to Guatemala." *Id.* That same reasoning applies in the present context with equal force. At the time Plaintiff was returned to Mexico, an immigration judge had ordered her removal to Honduras—not to Mexico—and that order was not yet final. Dkt. 13-2 at 2. It follows that Defendants could not have executed—and did not execute—the January Removal Order by returning Plaintiff to Mexico, where she remained free to appeal the immigration judge's decision. Accordingly, she was not "removed" from the United States within the meaning of the INA, and her return to Mexico did not implement, much less exhaust, the January Removal Order. *Cf. United States v. Fermin-Rodriguez*, 5 F. Supp. 2d 157, 163–64 (S.D.N.Y. 1998) (holding that an individual charged with illegal reentry under 8 U.S.C. § 1326 had not been "deported" or "removed" for purposes of that section where his deportation had been effected pursuant to a stayed order of removal).

To be sure, at the close of her immigration hearing, Plaintiff departed the United States and returned to Mexico, so it is understandable that she would understand herself to have been "removed" from the United States in some sense of the word. This quirk is a function of the "Remain in Mexico" program, which requires that individuals entering the United States by land from Mexico, including those who are citizens of third countries, remain in Mexico and enter the

United States only to attend their removal proceedings. *See* Kirstjen M. Nielsen, Sec'y of the Dep't of Homeland Sec, Policy Guidance for Implementation of the Migrant Protection Protocols (Jan. 25, 2020). But that does not mean that an individual's return to Mexico after receiving an order of removal that has not yet become final constitutes a "removal" or execution of the removal order. The "Remain in Mexico" program is premised on 8 U.S.C. § 1225(b)(2)(C), which provides that individuals who arrive "on land . . . from a foreign territory contiguous to the United States" may be returned "to that territory pending a proceeding under section 1229a." The INA separately sets forth specific rules regarding when and to where an individual ordered removed may be sent, *see* 8 U.S.C. § 1231, and attaches significant collateral consequences to those who have been "removed" pursuant to that process, *see, e.g.*, 8 U.S.C. §§ 1182(a)(9), 1326(a)(1). It is thus unlikely that Congress intended to attach such consequences to an individual traveling between a contiguous country and the United States for removal proceedings that have not yet concluded.

Because the Court concludes on the record now before it that the January Removal Order was not executed—and remains in effect today—Plaintiffs claim that she may not be removed without further, separate proceedings must be viewed as a challenge to the execution of a removal order itself, and this Court lacks jurisdiction to consider that challenge or to enjoin execution of the removal order. See 8 U.S.C. § 1252(g). The Court reaches that conclusion, moreover, notwithstanding the presumption of the availability of judicial review, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (explaining that courts must "presume that Congress does not intend to limit jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'"), and notwithstanding that fact that congressional limitations on judicial review may, at times, run afoul of the Constitution, *see, e.g.*,

*I.N.S. v. St. Cyr*, 522 U.S. 289 (2001) (explaining that a construction of § 1252 that would preclude habeas review of an "important question of law . . . §would raise serious constitutional questions"); *see also Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1079 (2020) (Thomas, J., dissenting) ("[T]he meaning of the Suspension Clause and its applicability to removal proceedings remain open questions."). The presumption of the availability of judicial review is not sufficient to overcome the unambiguous statutory limitation on this Court's jurisdiction to consider a challenge to a final order of removal, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), or a request to enjoin the execution of a removal order, *id.* § 1252(g). Nor does this case implicate the constitutionality of the jurisdictional limitations that Congress has enacted. For present purposes, Plaintiff does not challenge the constitutionality or lawfulness of the January Removal Order but merely argues that she has a statutory right to a new round of removal proceedings. That merits argument, however, turns on the same premise that the Court rejects for jurisdictional purposes—Plaintiff's argument would have legs only if the Court were to conclude that Defendants exhausted the January Removal Order by sending Plaintiff back to Mexico following her hearing. Although the Court appreciates Plaintiff's interest in litigating that question on the merits, it merges with the jurisdictional question, and the Court cannot conclude that Plaintiff's constitutional rights are infringed by the jurisdictional limitation.

Finally, Plaintiff separately seeks to avoid the limitation on the Court's authority to review a removal order or to enjoin its execution by arguing that Plaintiff's suit seeks only an "an affirmative order from this Court that the Defendants provide her with . . . new Section 240 proceedings" based on the theory that she was statutorily entitled to such proceedings—notwithstanding her preexisting order of removal—when she reentered the United States and was designated an unaccompanied minor. *See* Dkt 23 at 2. Thus, in her view, she is seeking merely

a preliminary "bridge" stay of her removal to permit this claim to be heard but is not otherwise

seeking relief on the merits that implicates her removal order.  The problem for plaintiff is that

even if her claim, so formulated, does not "arise" from any "decision or action by the Attorney

General to . . . execute removal orders" within the meaning of § 1252(g), § 1252(a)(5) and

§ 1252(b)(9) nonetheless channel "judicial review of orders of removal" and certain related

questions of law and fact to the courts of appeals.

"'[J]udicial review of an order of removal' as used in Section 1252(a)(5), encompasses

both direct and indirect challenges to removal orders." *Singh v. USCIS*, 878 F.3d 441, 445 (2d

Cir. 2017).  Whether a claim falls within § 1252(a)(5)'s channeling rule thus "turn[s] on the

substance of the relief that a plaintiff is seeking." *Martinez v. Napolitano*, 704 F.3d 620, 622–23

(9th Cir. 2012) (citing *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d. Cir. 2011)).  "When a claim

by an alien, however it is framed, challenges the procedure of an agency determination that is

'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)." *Id.*; *see also*

*Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007) (collecting cases).  In *Singh v. USCIS*, the

plaintiff was subject to a final order of removal and sought, through an Administrative Procedure

Act claim, to compel the USCIS to adjudicate an application for an adjustment of status—a form

of discretionary relief that, if granted, would make him a lawful permanent resident.  878 F.3d at

446.  Were that application successful, plaintiff's "pending removal order would, he hope[d], be

rendered a nullity." *Id.*  Because plaintiff sought to initiate separate proceedings from those

resulting in his removal order and thus to "render the removal order ineffective," the Second

Circuit held that his claim fell within § 1252(a)'s channeling provision.  *Id.*  The same reasoning

applies here and Plaintiff's challenge, even if styled as seeking new removal proceedings

notwithstanding Plaintiff's prior order of removal, is barred from this Court's consideration.  Her

remedy lies in her pending BIA appeal seeking to reopen the January Removal Order and appellate review of the BIA's decision.  Plaintiff has not asked this Court to review the BIA's denial of her stay application, nor is it apparent this Court would have jurisdiction to entertain such a claim.

Because this order merely addresses Plaintiff's motion for a temporary restraining order, and merely holds that she has not carried her burden of demonstrating that she is likely succeed in showing that the Court has jurisdiction, the present disposition does not require "dismissal of the case." *Food & Water Watch, Inc.*, 800 F.3d at 913.  Accordingly, the parties shall still appear for oral argument on May 6, 2020 at 10:00 a.m.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order, Dkt. 17, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  April 23, 2020